## CAUTIÑO ET AL. *v.* MUÑOZ ET AL.

# APELACIÓN procedente de la Corte de Distrito de Guayama.

### No. 811.—Resuelto en noviembre 11, 1912.

IMPUGNACIÓN DE ELECCIONES—DESESTIMACIÓN DE LA APELACIÓN.—Toda moción para desestimar una apelación debe ser presentada con anticipación al día señalado para la vista del recurso, y debe ser registrada en el libro de mociones y argumentada por los abogados y considerada por el tribunal con anticipación al día señalado para la vista del recurso.

ID.—TRANSCRIPCIÓN DE AUTOS EN APELACIÓN—ESTIPULACIÓN.—Cuando, como en el caso de autos, las partes estipulan las constancias que han de incluirse en la transcripción de autos en apelación, no procede la desestimación de la apelación por el fundamento de que no se ha presentado en el tribunal de apelación "una transcripción de todos los procedimientos habidos en la contienda" de acuerdo con los preceptos de la sección 11 de la ley sobre impugnación de elecciones de marzo 7, 1906.

ID.—VOTACIÓN SECRETA—SISTEMA AUSTRALIANO.—No existe precepto alguno en nuestra ley de elecciones de 1906 que exija que la votación sea secreta, sino únicamente que la elección se haga por medio de papeletas de acuerdo con el sistema australiano.

ID.—ELECTORES FÍSICAMENTE IMPOSIBILITADOS PARA MARCAR LA PAPELETA.—De acuerdo con nuestra ley de elecciones de 1906 los electores que por imposibilidad física o por no saber leer ni escribir, no puedan marcar sus papeletas, pueden solicitar a un inspector que las marque por ellos. Aun en el supuesto de que en el caso de autos se hubiera probado que más de cien electores habían votado por medio del inspector, en la forma indicada anteriormente, estando dichos electores capacitados para marcar su papeleta, éste no sería motivo suficiente para anular toda la elección, sino que únicamente podría servir de fundamento para rechazar los votos emitidos ilegalmente en esta forma; y suponiendo que el resultado de la elección fuera distinto rechazando los cien votos indicados, siempre sería necesario aducir prueba adicional para anular por completo la elección.

ID.—VALIDEZ DE LA ELECCIÓN—OBSERVANCIA DE LA LEY.—Se resolvió en el caso de autos que la elección impugnada en esta acción, se hizo en consonancia con la ley de elecciones vigente en Puerto Rico, y si en algunos extremos no se observó estrictamente dicha ley, estos extremos no son suficientes para invalidar toda la elección.

ID.—CONTESTACIÓN A LA DEMANDA—RÉPLICA.—Nuestro Código de Enjuiciamiento Civil no exige al demandante que replique a la contestación a la demanda que alega materia nueva de defensa, sino que por ministerio de la ley toda la materia nueva alegada en la contestación a la demanda se tiene por negada, sin necesidad de presentar una negación por escrito.

ID.—ADMISIONES CONDICIONALES HECHAS POR LAS PARTES—RÉPLICA ESCRITA A LA CONTESTACIÓN A LA DEMANDA.—En el caso de autos la corte sentenciadora rehusó admitir la admisión hecha por los demandantes de que ciertos electores votaron ilegalmente, porque la admisión fué hecha con la condición de que se permitiera a los demandantes probar que dichos electores ilegales

votaron a, favor de los demandados. Se resolvió en apelación que el tribunal sentenciador no cometió error al denegar dicha admisión condicional, pues el admitirla equivaldría a permitir la presentación de alegaciones orales en una corte de distrito, lo cual es contrario a nuestro Código de Enjuiciamiento Civil. La cuestión planteada en dicha admisión condicional de los demandantes debió haberse presentado por medio de una réplica escrita a la contestación a la demanda, alegando los hechos expresados en dicha admisión condicional.

ID.—COSTAS—HONORARIOS DE ABOGADOS—DESEMBOLSOS.—Ambas partes litigantes en un procedimiento sobre impugnación de elecciones tienen los mismos derechos con respecto a costas, y éstas se rigen por la sección 12 de la ley de impugnación de elecciones de marzo 7, 1906, según cuya sección las costas deben regirse por los mismos preceptos del Código de Enjuiciamiento Civil aplicables a costas.

ID.—COSTAS—HONORARIOS DE ABOGADOS—DESEMBOLSOS.—De acuerdo con la jurisprudencia constante de este tribunal, para que pueda imponerse a la parte condenada por la sentencia, el pago de honorarios de abogados, como parte de las costas, es indispensable que la cuantía litigiosa exceda de $500.

ID.—CUANTÍA LITIGIOSA — SUELDO DEL FUNCIONARIO DEMANDADO — ALCALDE — HONORARIOS DE ABOGADOS.—En un procedimiento sobre impugnación de elecciones, la cuantía litigiosa puede determinarse tomando por base el sueldo de los funcionarios litigantes, durante el período para el cual fueron elegidos. Bajo esta base, como en el caso de autos, los únicos funcionarios litigantes con derecho a percibir un sueldo mayor de $500, que es el importe de la cuantía litigiosa indispensable para que una parte pueda ser condenada al pago de honorarios de abogados, como parte de las costas, son los funcionarios que discuten el cargo de alcalde, es necesario concluir que únicamente el alcalde demandado tiene derecho a recobrar del alcalde demandante los honorarios de abogados, más las costas y desembolsos incurridos en el pleito, y los otros funcionarios litigantes sólo tienen derecho a recobrar sus costas y desembolsos.

ID.—COSTAS—DISCRECIÓN DEL TRIBUNAL SENTENCIADOR—GRADO DE CULPA.—De acuerdo con la ley de costas de marzo 12, 1910, el tribunal sentenciador tiene la facultad discrecional de conceder las costas teniendo en cuenta el grado de culpa o temeridad de la parte contra quien se ha dictado la sentencia, y la alegación de que la demanda presenta cuestiones nuevas de gran importancia bajo el punto de vista de moralidad pública, puede ser tenida en cuenta para graduar la culpa o temeridad, pero este tribunal no intervendrá en el ejercicio de esa facultad discrecional por el tribunal inferior, a menos que se demuestre que se ha cometido un gran abuso de discreción.

Los hechos están expresados en la opinión.

Abogados de los apelantes: Sres. *Cay. Coll Cuchí, Herminio Díaz Navarro y Eduardo Cautiño.*

Abogados de los apelados: Sres. *Willis Sweet, José Tous Soto, Luis Abella Blanco, José C. Ramos, Pedro Gómez Lasserre y Eduardo.Capó.*

EL JUEZ ASOCIADO SR. MACLEARY, emitió la opinión del tribunal.

El presente es un caso sobre impugnación de elecciones. Los demandantes eran los candidatos por el Partido Unionista para los cargos de alcalde, miembros del concejo municipal y de la junta escolar de Guayama, en noviembre de 1910, y los demandados fueron los candidatos del Partido Republicano para los mismos cargos en dicha elección. Al hacerse el escrutinio de los votos por el Consejo Ejecutivo, resultó del mismo que los demandados fueron electos y obtuvieron mayorías fluctuando éstas, entre quince y veintiún votos. Esta impugnación fué establecida de acuerdo con la ley que dispone la forma en que han de celebrarse los juicios en tales casos. (Ley aprobada en 7 de marzo de 1906; Leyes de la Sesión de 1906, pp. 59-63.) La demanda, después de expresar los hechos alegados con gran extensión, concluye con la siguiente súplica, a saber:

"Suplicamos a V. H. que en vista de las pruebas que presentamos en apoyo de nuestra demanda, dicte sentencia declarando nulos y de ningún valor los nombramientos hechos por el Consejo Ejecutivo en favor de todos y cada uno de los demandados; que los demandantes son los candidatos que para los cargos de alcalde municipal, miembros del concejo municipal y de la junta escolar para la ciudad de Guayama, obtuvieron mayor número de votos legales en las elecciones del 8 de noviembre de 1910, y por tanto con derecho a ejercer los cargos para los cuales fueron electos. Que se les libre certificado de nombramiento firmado por V. H. para que ellos puedan entrar en el desempeño de los puestos públicos para los cuales obtuvieron el mayor número de votos legales. Que se les dé posesión de los respectivos puestos para los cuales obtuvieron mayor número de votos legales en la precitada elección, despojando de dichos puestos a los demandados. Que se les conceda cualquier otro remedio a que en la ley son acreedores en lo que respecta a declarar nula la elección por las ilegalidades que se cometieron en la misma; y en tal caso que V. H. ordene nueva elección en la forma y modo que dispone la ley electoral sobre la materia. Que se condene a los demandados al pago de todas las costas de este litigio, con inclusión de honorarios de abogados."

Después de presentada la debida contestación, se celebró el juicio en la Corte de Distrito de Guayama ante el Hon. Harry P. Leake, juez especial, y se dictó sentencia a favor de los demandados, declarando que éstos habían sido debidamente electos para los distintos cargos que se encontraban desempeñando, debiendo los mismos recobrar las costas, desembolsos y honorarios de abogados. Contra esta sentencia que fué dictada el día 30 de agosto de 1911, interpusieron los demandantes a su debido tiempo, recurso de apelación, elevando a este tribunal la transcripción de autos que está ahora sometida a nuestra consideración.

Surge una cuestión preliminar con motivo de la moción que presentaron los demandados durante la vista para que se desestimara la apelación por el fundamento de no existir certificación alguna del secretario o de los abogados relativa al hecho de que la transcripción contiene todos los procedimientos que tuvieron lugar en este pleito. Se cita el artículo .11 de la Ley de 7 de marzo de 1906, (Ley sobre impugnación de elecciones) el cual exige este requisito en las apelaciones que se interpongan en tales casos. Las mociones para desestimar una apelación deben presentarse, y por lo general así se hace, algunos ·días antes del día señalado para la vista del caso, incluyéndose en el calendario de mociones las que se discuten separadamente y son tomadas en consideración por la corte con anterioridad a la celebración de la vista. Podría perfectamente alegarse que esta moción llega fuera de tiempo, habiendo sido presentada la transcripción de los autos el día 13 de mayo, sin que la vista tuviera lugar hasta próximamente un mes después. Pero se permitió a los apelados, sin que se formulara objeción a ello, presentar su moción, la que fué admitida por la corte para ser tomada en consideración con el mismo caso. Sin tener en cuenta las demás objeciones que se hicieron a esta moción, es una contestación suficiente a la misma con que sólo nos fijemos en el hecho de que este caso fué presentado

a este tribunal mediante una estipulación en la que tanto
la corte como los abogados quedan limitados a la considera-
ción de tres cuestiones solamente que surgieron durante el
juicio, y a las que se ha hecho referencia.   Siendo esto así
no había necesidad de presentar "una transcripción de *todos*
los procedimientos habidos en la impugnación" según se
determina en el artículo 11 de la expresada ley.   La moción
no podía concederse sin hacerse caso omiso de la estipu-
lación y debe por consiguiente ser desestimada.

Mediante una estipulación que fué debidamente presen-
tada y que aparece en la transcripción, las partes limitaron las
cuestiones que han de considerarse por este tribunal a tres,
a saber:

"A. Nulidad de la elección por haberse verificado la votación a
*viva voce.*

"B. Error cometido en la sentencia en lo referente a la condena de
costas.

"C. Error cometido durante el juicio por negarse la corte a acep-
tar las admisiones hechas por los demandantes con respecto a la ilega-
lidad de varios votantes puesto que eran electores ilegales."

Invertiremos el orden de estas cuestiones, disponiéndo-
las en la forma que nos parece más lógica, A, C, B.

Primera.  Con respecto a la nulidad de la elección por
haberse verificado la votación a *viva voce* en vez de secreta,
conviene hacer referencia a la ley electoral.   (Véanse las
Leyes de la Sesión de 1906, págs. 33-59.)   No hay disposición
alguna en nuestros estatutos que de modo expreso exija
que la votación sea secreta, sino que dispone dicha ley que
la elección se efectuará por medio de papeletas siguiendo el
sistema australiano de elección por papeletas.   También
se dispone que no habrá más de tres electores en el local de
la votación al mismo tiempo, y que cada elector recibirá la
papeleta oficial de los funcionarios de la elección, retirándose
entonces a una de las casetas donde preparará su papeleta,
la doblará debidamente, entregándola luego al funcionario
que la colocará en la urna.  Se dispone, además, que ningún

elector marcará su papeleta en forma alguna que pueda saberse por quién votó.

Pero se dispone además que los votantes que se encuentren físicamente imposibilitados o que no sepan leer o escribir, sean ayudados por los inspectores en la preparación de sus papeletas. Resulta que en esta .elección de Guayama un gran número, casi una mayoría de todos los votantes, solicitaron dicha ayuda. Y esto sucedió de tal modo que alegan los demandantes que la elección se verificó en realidad a *viva voce;* o sea cantando el voto en vez de por papeleta como exige la ley. Sin embargo, de la prueba que aparece en los autos resulta que solamente un voto se dió en esta forma por una persona que pudo preparar debidamente su papeleta y no tenía necesidad de solicitar ayuda de uno de los inspectores. Este voto fué dado por José Muñoz Vázquez, que es el principal demandado y desempeña actualmente el cargo de alcalde de la ciudad. Parece ser que al emitir su voto manifestó que votaba por toda la relación de candidatos republicanos, tratando tal vez con esto de dar un ejemplo a sus correligionarios y con el fin de animar al público en favor de su candidatura. Aun cuando se hubiera probado que muchos votos, por ejemplo más de ciento, se dieron en esta forma por personas que estaban capacitadas para preparar sus papeletas y no necesitaban pedir ayuda en la preparación de las mismas, aun en este caso esto no sería un motivo suficiente para anular toda la elección, sino que solamente podría dar lugar a la impugnación de aquellos votos que fueron dados en esa forma ilegal. Es cierto que si se hubiera presentado la debida prueba, el resultado de la elección podría haber sido distinto y demostrar los candidatos que impugnan la elección, que fueron ellos los electos y no los que se encuentran desempeñando los cargos; pero sería necesario que se hubiera presentado prueba de otros hechos adicionales para anular por completo la elección. Si se hubiera probado que se revisaron enteramente

las papeletas y que las personas que trataban de votar fueron llamadas solamente para expresar oralmente por qué partido o persona se resolvían a votar en la elección, entonces existiría una razón que sería muy poderosa para declarar nula toda la elección; pero eso no es lo que ha ocurrido en este caso, según aparece de los autos. Esta elección se llevó a cabo según resulta de la prueba contenida en los autos, en completa conformidad con la ley de elecciones de Puerto Rico, y si existieron algunas desviaciones de esa ley no fueron éstas suficientes para anular dicha elección, por lo que debemos resolver que la elección que se llevó a efecto para cargos municipales de Guayama en noviembre de 1910, no puede ser anulada por este fundamento. (MacCrary sobre elecciones, Capítulo XIII; *McCrane* v. *Nez Perce Co.*, Am. Cas., 1912 A, p. 170; 18 Idaho, 714; 112 Pac. Rep., 312.)

La próxima cuestión que tomaremos en consideración se refiere a la negativa de la corte sentenciadora a aceptar las admisiones hechas por los demandantes con respecto a la legalidad de varios votos que alegaron los demandados que eran ilegales. Esta admisión iba acompañada del ofrecimiento para probar que estos votos habían sido emitidos a favor de los demandados. Debemos considerar las admisiones hechas o que se traten de hacer por cualquiera de las partes en relación con las alegaciones presentadas en el caso y las cuestiones que surjan de las mismas en las cuales se fundó el caso. En el presente caso los demandantes alegan en su demanda que por lo menos sesenta de los votantes que llenaron papeletas en las elecciones municipales no reunían las condiciones para votar y que por tanto su voto era nulo y no debía contarse a favor de los demandados como se hizo al verificarse el escrutinio de la elección. Los demandados por el contrario negaron en su contestación estas alegaciones, alegando como materia nueva, que más de 200 votos ilegales fueron emitidos a favor de los de-

mandantes, haciéndose mención de los votantes que se dice
estaban incapacitados. El Código de Enjuiciamiento Civil
no exige que el demandante presente una réplica por escrito
a la contestación del demandado alegando una materia nueva,
sino que dispone que la misma se considerará como negada,
sin que sea necesario formular una alegación por escrito.
Desde luego que cualquiera de las partes puede durante el
curso del juicio hacer admisiones con respecto a la prueba
practicada por la parte contraria, pero dichas admisiones
deben hacerse en forma tal que comprendan las alegaciones
contenidas en los alegatos. En este caso los demandantes
tenían el derecho de admitir que estos votos a que se ha hecho
referencia eran ilegales, pero debieron haber hecho referen-
cia a la admisión con bastante amplitud para que incluyera
la alegación contenida en la contestación de los demandados
de que estos votos ilegales habían sido emitidos a favor
de los demandantes. No tenían ellos derecho por meras·
admisiones verbales a expresar como se admitió, que los
votos eran ilegales, ofreciendo a la vez prueba de que habían
sido emitidos a favor de los demandados. Para promover
una cuestión como ésta debió haberse formulado una réplica
por escrito con anterioridad a la celebración del juicio, o si
la corte lo permitía, después de haber empezado dicho juicio.
El permitir una admisión que sea procedente como la que
trataron de hacer los demandantes equivaldría a dar per-
miso para formular alegaciones orales en la corte de distrito,
lo cual no está* autorizado en nuestro Código de Enjui-
ciamiento Civil. Por tanto, la corte no cometió error alguno
al negar a los demandantes el derecho a hacer la admisión
que procedía con respecto a la ilegalidad de los votos men-
cionados en la contestación de los demandados. (Véase el
Código de Enjuiciamiento Civil, Tít. VII; Leyes de la
Sesión de 1904, p. 199 y siguientes.)

La tercera cuestión ha sido reservada para lo último, no
solamente por su importancia sino porque la imposición de
costas viene naturalmente después que se resuelve el caso.

Parece que las costas en este pleito son extraordinariamente excesivas y los honorarios de abogados ascienden a 12 o $15,000. En resumen, se ha dicho en uno de los alegatos que el memorandum de costas excedía de $30,000 según fué presentado primeramente a la corte de distrito, el que fué últimamente rebajado por la corte en el ejercicio de su discreción a la suma de $18,774.37. Pero nosotros para nada tenemos que considerar la cuantía de las costas, pues esta cuestión no está sometida a nuestra consideración. No se formuló impugnación alguna al cálculo hecho por la corte exceptuando la alegación de que era ilegal conceder honorarios de abogados en este caso. Los apelantes alegan que la ley de impugnación de elecciones en su artículos 13, confiere al demandante el derecho a recobrar como parte de los perjuicios sufridos los honorarios de su abogado que hayan sido originados en su pleito. Alegan también que este derecho no se ha conferido a los demandados sino que tienen que litigar costeándose sus gastos, por lo menos en lo 'que respecta a los honorarios de sus abogados. El artículo 12 de la ley que rige las impugnaciones de elecciones dispone que las costas en tales casos se tasarán de acuerdo con las leyes que rigen para las controversias en los pleitos civiles, a menos que se dispusiere específicamente lo contrario. (Véanse las leyes de la Sesión de 1906, p. 81.) Los apelados alegan que este es el artículo que regula este caso, considerado en relación con los artículos 327 y 329 del Código de Enjuiciamiento Civil, según han sido enmendados por la ley aprobada últimamente sobre la materia. (Véase el Capítulo VI del Código de Enjuiciamiento Civil; Leyes de la Sesión de 1904, páginas 266 y siguientes.)

Parece extraño que la legislatura dispusiera que una de las partes en el pleito—aun cuando fuera un caso sobre impugnación de elecciones—tenga derecho a recobrar honorarios de abogados como parte de las costas y negar el mismo derecho a la otra parte. Sería aún más extraño que esta

concesión se hiciera a los demandantes que iniciaron la impugnación y se negara a los demandados que ganaron la elección, fueron declarados con derecho a los cargos por el Consejo Ejecutivo y recibieron los certificados y estaban en posesión de dichos cargos mediante lo que por lo menos resulta ser un título *prima facie.* No podemos estar conformes en el parecer de que fuera la intención de la legislatura conceder honorarios de abogados a una de las partes y negarlos a la otra, pues ambas partes se encuentran en igualdad de condiciones con respecto a ese particular. A nuestro juicio las costas en este caso, incluyendo honorarios de abogados se rigen por el artículo 12 a que se ha hecho referencia y deben ser concedidas lo mismo que en los demás casos civiles.

Surge entonces la cuestión de si éste es un caso en que pueden concederse o nó honorarios de abogados, como lo hizo la Corte de Distrito de Guayama en la sentencia dictada al terminar esta impugnación de elecciones.

Pero no podemos estar de acuerdo con la sentencia contra la cual se ha interpuesto esta apelación, en cuanto en la misma se ordena que los demandados tienen derecho a recobrar de los demandantes las costas y desembolsos ocasionados en el juicio, junto con una suma equitativa por honorarios de abogados. Ese pronunciamiento según ha sido hecho por la corte sentenciadora infringe el artículo 327 del Código de Enjuiciamiento Civil tal como ha sido enmendado por la ley de 12 de marzo de 1908, e interpretado por esta corte al dictar sus sentencias en los casos de *González* v. *Gromer,* 16 D. P. R., 1; *Modesto* v. *Sucesión Dubois,* 16 D. P. R., 842; *Veve* v. *Municipo de Fajardo,* resuelto en 29 de junio de 1912, y *Torres et al.* v. *Pérez,* resuelto en 28 de junio de 1912.

Puede admitirse que las costas y desembolsos originados en un pleito deben concederse a la parte victoriosa, pero es un requisito indispensable establecido por la ley, según hasta ahora hemos resuelto, que para que puedan concederse hono-

rarios de abogados, la suma en controversia en el pleito o procedimiento debe exceder de $500. En el presente caso puede estimarse la suma en cuestión tomando en consideración el sueldo asignado a los cargos en relación a los cuales se estableció la impugnación. El cargo de alcalde de Guayama tiene asignado un sueldo de $1,200, siendo dicho funcionario elegido por el término de cuatro años, lo que forma un total de $4,800 como asignación para su cargo; y con arreglo a la ley sobre impugnación de elecciones (Art.V), la persona cuya elección se impugna deberá prestar una fianza que no será menor del doble de la cantidad del sueldo total por el período de tiempo prescrito en la ley. En este caso la fianza se exigió a la persona que actualmente desempeña el cargo de alcalde, por la suma de $11,000 la que fué debidamente prestada. Tomando en consideración estos hechos y considerando el sueldo asignado a los distintos cargos como norma pecuniaria que ha de tenerse en cuenta en la controversia, creemos que no hay duda alguna de que dicha suma excede de $500, y por tanto pueden fijarse los honorarios de abogados como parte de las costas, de conformidad con el artículo 12 de la ley que rige sobre impugnación de elecciones. Pero esta suma alcanza solamente a $500 en el presente caso, con respecto al demandante que establece una acción contra uno de los demandados en relación con el cargo de alcalde, que es el único que tiene asignado un sueldo que excede de esa suma. No ocurre lo mismo en cuanto a los demás demandantes que se unieron en el pleito al candidato para el referido puesto, por cuanto los cargos que trataban de recuperar no tenían sueldo fijado; y por consiguiente no se trataba de ninguna suma de dinero que pudiera tomarse en consideración. Por tanto, resulta claro a nuestro juicio que los demandantes en este caso pueden ser obligados a pagar a los demandados, las costas y desembolsos en el presente pleito, y que el demandante, que es el candidato para el puesto de alcalde, puede solamente

ser obligado a pagar al demandado que ocupa dicho cargo, una suma razonable por los gastos originados en su defensa.

No hemos perdido de vista el hecho de que los apelantes en este caso alegan que este pleito debió haberse resuelto sin especial condena de costas, por las siguientes razones:

(1) Porque de los hechos probados en la sentencia resulta que los demandantes tenían una razonable causa de acción y probaron casi todas las alegaciones contenidas en la demanda.

(2) Porque se promovieron nuevas cuestiones en la demanda que eran de la mayor importancia desde el punto de vista de la moral pública.

Sin embargo, debemos tener presente que la cuestión relacionada con las costas se rige por nuestros estatutos locales, y que según ellos el juez sentenciador tiene en este caso la facultad discrecional de concederlas, teniendo en cuenta el grado de culpabilidad si alguna hubiere de la parte contra quien se dictó la sentencia. (Véase la Ley de 12 de marzo de 1910, a que se ha hecho referencia.) Por tanto lo que debe tomarse en consideración para condenar en costas es la culpabilidad o temeridad de la parte contra quien se dicte la sentencia, aun cuando la nueva materia presentada pueda tenerse en consideración al apreciar dicha culpa o temeridad.

Hasta ahora hemos resuelto frecuentemente que esta corte no intervendrá en el ejercicio de las facultades discrecionales de las cortes inferiores, a menos que se demuestre que se ha cometido un gráve abuso de discreción, lo que no ha ocurrido en este caso en lo que se refiere a las costas y desembolsos a cuyo pago han sido condenados todos los demandantes; pero con referencia a la cuestión del pago de honorarios de abogados a que han sido condenados todos los demandantes, dicha sentencia puede solamente ser sostenida con respecto al demandante que trata de obtener el cargo de alcalde contra la parte demandada que fué la per-

sona elegida para dicho cargo, sin que deba aplicarse dicha sentencia a los otros demandantes en este pleito, por las razones consignadas anteriormente.

En vista de lo que dejamos expresado, la sentencia dictada en este caso debe confirmarse, excepto en lo que se refiere a las costas, desembolsos y honorarios de abogados, con respecto a lo cual debe ser modificada según se deja expresado; de conformidad con dicha modificación deberá concederse una oportunidad a los demandados para presentar nuevos memorandums dentro del término de 10 días a partir de la fecha en que la sentencia de esta Corte Suprema sea registrada en la del distrito, según dispone la ley.    Debe dictarse sentencia de acuerdo con esta opinión.

*Resuelto de conformidad.*

Jueces concurrentes: Sres. Presidente Hernández y Asociados Wolf, del Toro y Aldrey.

La petición del demandado Genaro Cautiño por su abogado Eugenio Benítez Castaño, sobre reconsideración de sentencia en este caso, fué denegada con fecha de diciembre 23, 1912.